```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CAMERON INTERNATIONAL TRADING COMPANY,
INC. and LEADING EXTREME OPTIMIST
INDUSTRIES LIMITED,

                  Plaintiffs,          MEMORANDUM & ORDER
                                       03-CV-02496 (JS)
       -against-

HAWK IMPORTERS, INC., SHYAM BAHETI,
and RAM BAHETI,

                  Defendants.
----------------------------------------X
```

APPEARANCES:
For Plaintiffs:      John J. Lynch, Esq.
                     Robert Justin DeBrauwere, Esq.
                     Pryor Cashman LLP
                     410 Park Avenue
                     New York, NY 10022

For Defendants:      Balram Kakkar, Esq.
                     Kakkar & Kadish
                     144 E. 44th Street, 6th Floor
                     New York, NY 10017

                     Harpreet Walia, Esq.
                     Pankaj Bhatia, Esq.
                     Walia Law Firm
                     611 W. Sixth Street, Suite 1600
                     Los Angeles, CA 90017

SEYBERT, District Judge:

Pending before the Court is: (1) Plaintiffs' application to enforce the Settlement Agreement; and (2) Defendants' motion to dismiss for lack of subject matter jurisdiction. On March 24, 2010, Magistrate Judge William D. Wall issued a Report & Recommendation ("R&R") recommending that the Court grant Plaintiffs' application to enforce the

Settlement Agreement, and deny Defendants' motion to dismiss. In response to Judge Wall's R&R, Defendants filed objections.

For the foregoing reasons, Defendants' objections are SUSTAINED IN PART AND OVERRULED IN PART. Judge Wall's R&R is largely adopted. However, the Court slightly modifies Plaintiffs' application to enforce the judgment. Additionally, the Court not only denies Defendants' motion to dismiss, but ORDERS Defendants, and their counsel, to SHOW CAUSE why they should not be sanctioned for filing it, or otherwise held in contempt.

BACKGROUND

The Plaintiffs, Cameron International Trading Co., Inc. d/b/a Carson Optical, and Leading Extreme Optimist (collectively, "Carson"), import, sell and distribute optical devices. In 2003, they commenced this action, asserting claims for copyright infringement, trade dress infringement, trademark infringement, false designation of origin, unfair competition and deceptive business practices against the defendants, Hawk Importers, Inc., Shyam Baheti, and Ram Baheti (collectively, "Hawk"). The claims arose out of Hawk's alleged manufacture, distribution and sale of optical devices that infringed upon Carson's copyright, trademark and other rights in its products. The parties settled the lawsuit, and entered into a Stipulation

of Settlement ("Settlement Agreement") on September 20, 2004. The Settlement Agreement provided, in part, that:

> 19. The parties hereby agree that the United States District Court for the Eastern District of New York shall retain jurisdiction over the Litigation for the purpose of enforcing, if necessary, the [Settlement Agreement] and that Such Court shall have exclusive jurisdiction over the Litigation for that purpose.
>
> 20. The parties hereby agree that in the event of the failure on the part of either Plaintiffs or Defendants to comply with any of the terms and conditions herein, upon ten business days' written notice to the allegedly noncomplying parties . . . during which period the allegedly noncomplying parties will have the opportunity to cure any noticed violation or default hereunder to the extent such cure is possible, the parties alleging such default or violation may apply to United States District Court for the Eastern District of New York to enforce this [Settlement Agreement]. Upon demonstrating to the Court that the allegedly noncomplying parties have violated the terms of this [Settlement Agreement], the complaining parties will be entitled to temporary, preliminary and permanent injunctive relief and to recover, in addition to their actual damages and the noncomplying parties' profits from such violation, their costs and expenses. The prevailing parties in any such action shall be entitled to their reasonable attorney's fees.[1]

On November 15, 2004, this Court "so ordered" the Settlement Agreement.[2] Thereafter, the parties executed a

---

[1] Docket No. 24.
[2] Docket No. 24.

Stipulation of Dismissal with prejudice, which the Court so ordered on January 6, 2005.[3] The Stipulation of Dismissal provides that: "[The parties] having entered into a [Settlement Agreement] that has been "so ordered" by this Court, and Defendants having timely paid the Settlement Payment pursuant to such Stipulation of Settlement and Order, IT IS HEREBY STIPULATED AND AGREED by and between Plaintiffs and Defendants, by their undersigned counsel, that the [Litigation] be dismissed with prejudice to all parties, with each party to bear its own costs and attorney fees."

On March 20, 2009, Carson sent Hawk a letter asserting that Hawk had engaged in infringing activity in breach of the Settlement Agreement and giving them an opportunity to cure. Carson received no response from Hawk, and started the current Enforcement Motion on April 13, 2009, seeking leave to reopen the case and the entry of an order to enforce the Settlement Agreement's terms.

## DISCUSSION

I. Standard of Review

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no timely objections have been made, the

---
[3] Docket No. 26.

4

"court need only satisfy itself that there is no clear error on the face of the record." Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (internal quotations omitted). If, however, objections have been filed to an R&R concerning dispositive motions, the Court must review the objected-to portions of the R&R de novo.

II. Defendants' Motion to Dismiss

In their motion to dismiss, and their objections to Judge Wall's R&R, Defendants argue that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims because: (1) it dismissed this action with prejudice and without properly reserving jurisdiction; and (2) Plaintiffs' claims based on the Settlement Agreement do not otherwise establish diversity jurisdiction.

Judge Wall rejected this argument. And the Court considers it completely frivolous. But, more than that, Defendants' argument displays outright contempt for this Court's orders. Defendants expressly agreed, and the Court "so ordered" that it would "retain jurisdiction over the Litigation for the purpose of enforcing, if necessary, the [Settlement Agreement]." Docket No. 24 at ¶ 19. And Defendants further agreed, and this Court "so ordered" that a party "alleging a default or violation" may apply to this Court for relief. Id. at ¶ 20. The Court then incorporated the Settlement Agreement's terms by

5

reference when it issued the Stipulation of Dismissal, setting forth that dismissal was appropriate because the parties "having entered into a [Settlement Agreement] that has been 'so ordered' by this Court," had resolved their differences. Docket No. 26. Yet, despite expressly consenting to the Court's continued jurisdiction, Defendants now try to wiggle out of it, and ask the Court to hold that its own orders mean nothing. And this attempt is particularly troubling because, not only does the Settlement Agreement vest this Court with continuing jurisdiction, it provides this Court with "exclusive jurisdiction over the Litigation for that purpose." Thus, if the Court decided for some reason to accept Defendants' argument and negate its own well-reasoned orders, it is unclear if Plaintiff could enforce the Settlement Agreement anywhere.

The Court's orders mean what they say. Defendants have wasted the Court's time, and Plaintiffs' attorneys' fees, briefing a totally nonsensical, legally illogical motion to dismiss. Quite obviously then, the motion to dismiss is DENIED AS FRIVOLOUS. In addition, the Court ORDERS Defendants, and their counsel, to SHOW CAUSE why they should not be sanctioned under Fed. R. Civ. P. 11 and/or 28 U.S.C. § 1927, or otherwise held in contempt.

III. Enforcing the Settlement Agreement

Plaintiffs have asked for an order that, among other things: (1) finds that Defendants' item numbers MG7613, MG715AA, and MG2515 copy Plaintiffs' products covered by the Settlement Agreement; and (2) "prohibit[s] defendants from manufacturing, advertising, offering for sale and selling the aforementioned products and any other products that copy Plaintiffs' intellectual property."

After considering the parties' evidence and conducting a Show Cause hearing, Judge Wall reported that "plaintiffs have established proof of the breach of the settlement agreement," and recommended that the Court enter Plaintiffs' proposed order. R&R at 7.

In filing objections, Defendants do not dispute Judge Wall's finding that the relevant products are covered by the Settlement Agreement. But Defendants do raise various objections to Judge Wall's R&R. As discussed below, these arguments are largely without merit, although the Court does agree that the proposed order's scope should be modified.

A. The "Cure" Provision

First, Defendants contend that they did not breach the Settlement Agreement because the Settlement Agreement contains a "cure" provision, and they had stopped selling the infringing products by the cure date. Specifically, they argue Settlement

7

Agreement ¶ 20 controls. That paragraph states, in pertinent part:

> 20. The parties hereby agree that in the event of the failure on the part of either Plaintiffs or Defendants to comply with any of the terms and conditions herein, upon ten business days' written notice to the allegedly noncomplying parties . . . during which period the allegedly noncomplying parties will have the opportunity to cure any noticed violation or default hereunder to the extent such cure is possible, the parties alleging such default or violation may apply to United States District Court for the Eastern District of New York to enforce this [Settlement Agreement]. Upon demonstrating to the Court that the allegedly noncomplying parties have violated the terms of this [Settlement Agreement], the complaining parties will be entitled to temporary, preliminary and permanent injunctive relief and to recover, in addition to their actual damages and the noncomplying parties' profits from such violation, their costs and expenses. The prevailing parties in any such action shall be entitled to their reasonable attorney's fees.

Under this provision, Plaintiffs sent written notice to Defendants on March 20, 2009, asserting a breach. And, Defendants claim, they ceased selling the infringing products by March 30, 2009. Thus, Defendants argue, they complied with the Settlement Agreement's "cure" provision (though they did not notify Plaintiffs' of their alleged "cure"), and thus cannot be held liable for breaching the Settlement Agreement.

This argument is rejected. Neither party cites any New York law interpreting contractual "cure" provisions. And the Court's own research could find little useful guidance. Nevertheless, it is hornbook contractual law that, when interpreting a contract, the Court must derive the parties' "intent by examining the document as a whole. Effect and meaning must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms. Moreover, the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose" Niagara Frontier Transp. Authority v. Euro-United Corp., 303 A.D.2d 920, 921, 757 N.Y.S.2d 174, 176 (4th Dep't 2003). Here, the Settlement Agreement repeatedly and unambiguously precludes Defendants from infringing Plaintiffs' intellectual property, no matter the circumstances. Settlement Agreement ¶¶ 4, 6, 7, 8, 9, 15. Defendants' proffered interpretation of the "cure" provision would effectively render many of those clauses a nullity. Under Defendants' suggested interpretation, they could infringe Plaintiffs' property as much as they wanted and face no liability until: (1) Plaintiffs discover the breach; then (2) send Defendants a "cure" notice; then (3) 10 days pass. Such an interpretation would completely frustrate the Settlement Agreement's purpose: that Defendants not infringe, and not profit from any infringement. Accordingly, the Court

9

understands the "cure" provision as only a procedural limitation on Plaintiffs' ability to bring suit: they must wait 10 days, in the hopes that they can work out any disagreement with Defendants amicably. The "cure" provision does not otherwise obliterate or obfuscate Plaintiffs' right to seek relief, including damages and attorneys' fees.

    B.    <u>Evidentiary & Procedural Objections</u>

Defendants also argue that there is no credible evidence that they ever sold the infringing products. In this regard, Defendants argue that Plaintiffs submitted only hearsay, not admissible evidence. And Defendants further argue that entering the proposed order is "grossly unfair," because there was "no indication from the Court that the litigation was at a phase where trial witnesses were to be called, evidence was to be authenticated, etc.," and they assumed that a "trial schedule" would be set.

These arguments are meritless. True, Plaintiffs did principally rely on hearsay at the Show Cause hearing. But Defendants did not object to this use of hearsay. Thus, they waived their right to object to the Court considering it. <u>See United States v. Local 1804-1, Intern. Longshoremen's Ass'n</u>, 812 F. Supp. 1303, 1323 (S.D.N.Y. 1993). Moreover, Defendants had full notice that Judge Wall intended to take testimony and other evidence. The Court's October 30, 2009 Order directed

Defendants to "SHOW CAUSE why the Court should not enter an Order granting Plaintiffs the relief they sought in their April 13, 2009 motion to reopen this case," and Judge Wall then scheduled a Show Cause hearing. A Show Cause hearing is exactly that, an opportunity for the Court to hear evidence concerning whether relief should be granted. While it is possible that Defendants' counsel is ignorant of federal practice, that ignorance is no excuse. See Sheikhan v. Lenox Hill Hosp., 98-CV-6468, 1999 WL 199010, at *2 (S.D.N.Y. 1999). Defendants are not entitled to a "do over."

    C.    Scope of the Order

Finally, Defendants argue that Plaintiffs' proposed order improperly goes beyond the scope of the original Settlement Agreement. In this regard, Defendants contend that Plaintiffs' proposed order, which Judge Wall recommended enacting: (1) goes beyond Settlement Agreement's terms in prohibiting "manufacturing, advertising, offering for sale and selling the aforementioned products," instead of just restricting them from "import[ing], distribut[ing], or sell[ing]" the products; (2) impermissibly has no expiration date.

The Court finds that Defendants are correct on both counts. But it will do them little substantive good. As a technical matter, the Settlement Agreement only limits

11

"import[ing], distribut[ing], or sell[ing]" not "manufacturing, advertising, [or] offering for sale." So, under the Settlement Agreement's terms, Defendants are free to "manufactur[e], advertis[e], [and] offer[] for sale" as much as they want, provided that they don't actually "import, distribute, or sell." It is curious, in the least, why Defendants have expended significant attorneys' fees to preserve their rights to manufacture and advertise products that they can't legally sell.[4] But those rights are preserved nevertheless.

Second, Defendants are right that Plaintiffs' proposed order should expire with the relevant patents. True, as Defendants note, the Settlement Agreement also lacks a time limitation. But federal patent law generally precludes parties from extending their patent rights through contract. See Brulotte v. Thys Co., 379 U.S. 29, 30, 85 S. Ct. 176, 13 L. Ed. 2d 99 (1964). In Brulotte, the Supreme Court held a license agreement unenforceable to the extent it required royalty payments even after patents expired. It follows that, if a party can't legally agree to pay a royalty after a patent expires, it certainly can't agree to abide by even tougher forms of post-expiration patent protection, such as abstaining from selling competing products. So the Court clarifies Plaintiffs'

---

[4] Particularly because such actions will almost certainly lead to litigation and discovery demands as to whether Plaintiffs have impermissibly engaged in importing, distributing or selling.

12

proposed order to reflect that neither this order, nor the Settlement Agreement, prohibits Defendants from importing, distributing, or selling products whose patent protection has expired, and if those products do not otherwise infringe upon Plaintiffs' intellectual property. The Court notes, however, that the Settlement Agreement was only enforceable to this extent anyway. Thus, although the Court sustains this objection, it was completely unnecessary.

## CONCLUSION

Magistrate Judge Wall's R&R is ADOPTED IN PART AND MODIFIED IN PART.

Defendants' motion to dismiss is DENIED AS FRIVOLOUS. The Court sua sponte ORDERS Defendants, and their counsel, to SHOW CAUSE why they shouldn't be sanctioned under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and/or otherwise held in contempt for making this motion and the argument contained within. Defendants, and their counsel, have fourteen (14) days to respond to this Order to Show Cause. Plaintiffs response is due seven (7) days later, and, if Plaintiffs' wish, can include records detailing attorneys' fees spent responding to Defendants' motion to dismiss.

Plaintiffs' motion to enforce the Settlement Agreement is GRANTED IN PART AND DENIED IN PART. The Court hereby Orders the following relief:

(1) The Court finds that Hawk's rimless magnifier (item number MG7613, the "Infringing Magnifier"), Hawk's portable folding loupe magnifier (item numberMG7ISAA, the "Infringing Loupe"), and Hawk's hands free magnifier (its item number MG25I5. the "Infringing Hands Free Magnifier") copy the respective molds of Plaintiffs' Carson's RM-95 RIMFREE rimless magnifier (Leading Extreme item number RLB90), Carson's TriView TV-IS portable folding loupe magnifier (Leading Extreme item number MP30), and Carson's MagniFree HF-15 hands free, lighted, hanging magnifier (Leading Extreme item number 25I2+LBll), and that Defendants' importation, distribution and sale of such infringing items violated the Stipulation of Settlement and Order;

(2) The Court prohibits Defendants from importing, distributing, and/or selling the Infringing Magnifier, the Infringing Loupe, the Infringing Hands Free Magnifier and any other products that copy Plaintiffs' intellectual property, including, but not limited to, any reproductions, copies, counterfeit or colorable imitations of the Infringing Magnifier, the Infringing Loupe and the Infringing Hands Free Magnifier, which shall include destroying any and all catalogs or catalog pages that display or otherwise reference the Infringing Magnifier, the Infringing Loupe or the Infringing Hands Free Magnifier, and removing from any Hawk or Hawk affiliate websites any and all advertisements, depictions of, or references to, the Infiinging Magnifier, the Infringing Loupe or the Infringing Hands Free Magnifier;

(3) The Court requires Defendants to produce to Plaintiffs true and accurate copies of all books, records and other documents including, but not limited to, invoices, records of payment, agreements, and all correspondence relating to the manufacture and sale of any magnifier products that copy Plaintiffs' intellectual property, including, but not limited to, any reproductions, copies, counterfeit or colorable imitations of the Infringing Magnifier, the Infringing Loupe and the Infringing Hands Free Magnifier, as well as any other products that copy Plaintiffs' designs;

(4) The Court requires Defendants to provide Plaintiffs with a detailed accounting of their profits

realized from the sale of any magnifier products that copy Plaintiffs' intellectual property, including, but not limited to, any reproductions, copies, counterfeit or colorable imitations of the Infringing Magnifier, the Infringing Loupe and the Infringing Hands Free Magnifier; and

(5) The Court requires Defendants to pay Plaintiffs their profits from such violations as well as to reimburse Plaintiffs for their costs, expenses and reasonable attorneys' fees in reopening and prosecuting this action.

(6) Nothing in this Order, or the Settlement Agreement, shall be interpreted as prohibiting Defendants from importing, distributing, or selling products whose term of patent protection has expired, if those products do not otherwise infringe upon Plaintiffs' intellectual property.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
November 2, 2010