UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CAMERON INTERNATIONAL TRADING COMPANY,
INC. and LEADING EXTREME OPTIMIST
INDUSTRIES LIMITED,

              Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                                    03-CV-02496 (JS)
    -against-

HAWK IMPORTERS, INC., SHYAM BAHETI,
and RAM BAHETI,

              Defendants.
----------------------------------X

Appearances:
For Plaintiffs:       John J. Lynch, Esq.
                        Robert Justin DeBrauwere, Esq.
                        Pryor Cashman LLP
                        410 Park Avenue
                        New York, NY 10022

For Defendants:      Balram Kakkar, Esq.
                        Kakkar & Kadish
                        144 E. 44th Street, 6th Floor
                        New York, NY 10017

                        Harpreet Walia, Esq.
                        Pankaj Bhatia, Esq.
                        Walia Law Firm
                        611 W. Sixth Street, Suite 1600
                        Los Angeles, CA 90017

SEYBERT, District Judge:

        On November 2, 2010, the Court: (i) denied Defendants' motion to dismiss; (ii) enforced a Settlement Agreement against Defendants; and (iii) ordered Defendants to show cause why they shouldn't be sanctioned under FED. R. CIV. P. 11 ("Rule 11"), 28 U.S.C. § 1927 ("Section 1927"), and/or otherwise held in

contempt for advancing frivolous legal arguments in connection with the denied motion to dismiss. See 2010 WL 4568980, 2010 U.S. Dist. LEXIS 117091. Both Plaintiffs and Defendants have responded to this Order to Show Cause.

For the reasons discussed below, the Court holds that Defendants' counsel violated Rule 11. Having considered possible remedies, the Court finds that monetary sanctions directed against Defendants' counsel are the most appropriate response. Accordingly, the Court holds Defendants' counsel jointly and severally liable in the amount of $4,900.

BACKGROUND

The Court presumes familiarity with the underlying facts. In brief, Defendants moved to dismiss on the grounds that the Court lacked continuing jurisdiction to enforce a Stipulation of Settlement ("Settlement Agreement") that the parties entered into on September 20, 2004. Defendants did so even though that Settlement Agreement provided, in part, that:

> 19. The parties hereby agree that the United States District Court for the Eastern District of New York shall retain jurisdiction over the Litigation for the purpose of enforcing, if necessary, the [Settlement Agreement] and that Such Court shall have exclusive jurisdiction over the Litigation for that purpose.
>
> 20. The parties hereby agree that in the event of the failure on the part of either Plaintiffs or Defendants to comply with any of the terms and conditions herein, upon ten

> business days' written notice to the allegedly noncomplying parties . . . during which period the allegedly noncomplying parties will have the opportunity to cure any noticed violation or default hereunder to the extent such cure is possible, the parties alleging such default or violation may apply to the United States District Court for the Eastern District of New York to enforce this [Settlement Agreement]. Upon demonstrating to the Court that the allegedly noncomplying parties have violated the terms of this [Settlement Agreement], the complaining parties will be entitled to temporary, preliminary and permanent injunctive relief and to recover, in addition to their actual damages and the noncomplying parties' profits from such violation, their costs and expenses. The prevailing parties in any such action shall be entitled to their reasonable attorney's fees.[1]

Defendants contended, before both Magistrate Judge Wall and myself, that these words – which they agreed to and the Court expressly "so ordered" – lacked any meaning, because the "so ordered" Stipulation of Dismissal somehow failed to incorporate the Settlement Agreement. Docket No. 47-1 at p. 4; Docket No. 55 at p. 10. In so arguing, Defendants argued that the following words were insufficient to incorporate the Settlement Agreement:

> [The parties] having entered into a **Stipulation of Settlement and Order** that has been 'so ordered' by this Court, and Defendants having timely paid the Settlement Payment pursuant to such **Stipulation of Settlement and Order**, IT IS HEREBY

---

[1] Docket No. 24.

> STIPULATED AND AGREED by and between Plaintiffs and Defendants, by their undersigned counsel, that the [Litigation] be dismissed with prejudice to all parties, with each party to bear its own costs and attorney fees.

(emphasis supplied)

Judge Wall rejected this argument,[2] and I ordered Defendants to show cause why they shouldn't be sanctioned for making it.

## DISCUSSION

I. Form of Sanctions

The Court's Order asked Defendants to show cause why they shouldn't be sanctioned under Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent power to hold parties and attorneys in contempt. After some consideration, the Court finds that Rule 11 is the most appropriate vehicle to address Defendants' conduct. Additionally, the Court finds that sanctions, if appropriate, should be directed only against Defendants' counsel, not Defendants. Below, the Court briefly explains why.

Section 1927 provides that an attorney who "so multiplies the proceedings in any case unreasonably and

---

[2] In his Report and Recommendation, Judge Wall did not expressly call this argument frivolous. He merely rejected it. Docket No. 53 at p. 3-4. However, in considering whether to sanction Defendants, I have conferred with Judge Wall's Chambers, to see whether his opinion of Defendants' arguments concurs with my own. Judge Wall's Chambers echoed that sanctions are appropriate here.

4

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Here, however, the Settlement Agreement already entitles Plaintiffs to their costs, expenses, and reasonable attorney's fees. See supra at 3.  And, based on that entitlement, the Court has already ordered Defendants "to reimburse Plaintiffs for their costs, expenses and reasonable attorneys' fees in reopening and prosecuting this action."  2010 WL 4568980 at *6; 2010 U.S. Dist. LEXIS 117091 at *17.  So, even if Defendants' counsel violated Section 1927, Plaintiffs have incurred no "excess costs, expenses, and attorneys' fees," that they are not otherwise entitled to recover.

Contempt is also inappropriate.  Civil contempt is "imposed to compel obedience to a lawful court order or to provide compensation to a complaining party." New York State Nat. Organization for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989).  Here, the Court does not seek to "compel obedience" so much as it wishes to sanction frivolous arguments that asked the Court to consider its own orders meaningless.  And, as discussed above, the Court cannot provide any "compensation" to Plaintiffs that they aren't already otherwise entitled to receive.  So, civil contempt doesn't fit.

Rather, Defendants' contempt, if any, is criminal in nature, because such a sanction would seek to "punish [] an offense against the public and to vindicate the authority of the court." Id. Specifically, the Court seeks to punish: (i) a blatant disregard for the enforceability of the Court's prior orders; (ii) an improper use of the Court for the purpose of harassing Plaintiffs and needlessly increasing their litigation costs; and (iii) a dereliction of counsel's legal duty to not advance frivolous arguments. See generally FED. R. CIV. P. 11(b). But this sanction also doesn't fit. For, ordinarily, the Court should "warn an attorney, party, or attendee that further instances of particular behavior will be deemed contemptuous before actually charging the offender with contempt." U.S. v. Marshall, 371 F.3d 42, 48 (2d Cir. 2004). And here, the Court did not previously warn Defendants, or their counsel, about their behavior.

This leaves Rule 11. Rule 11 requires that an attorney sign every pleading, written motion, and other paper filed with the courts. FED. R. CIV. P. 11(a). By doing so, the attorney certifies, among other things, that "(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a

nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." FED. R. CIV. P. 11(b). The Court may not, however, impose a monetary sanction "against a represented party for violating Rule 11(b)(2)." FED. R. CIV. P. 11(c)(5)(A).

II. Application of Rule 11

When the Court sua sponte considers imposing Rule 11 sanctions, and the challenged submission can no longer be "corrected or withdrawn," a "subjective bad faith" standard applies. In re Pennie & Edmonds LLP, 323 F.3d 86, 87-91 (2d Cir. 2003).

Here, Defendants argue that their legal position is not sanctionable because, they contend: (i) the Stipulation of Dismissal did not incorporate the Settlement Agreement's terms, or otherwise retain jurisdiction; and (ii) and Stipulation of Dismissal did not contemplate, or provide for, the Court's continued jurisdiction to enforce the Settlement Agreement. Rather, Defendants contend, the Settlement Agreement's "logical construct" suggests that the Court "had continued jurisdiction to enforce the Settlement Agreement" only "until the case was dismissed with prejudice" and that, upon such a dismissal, "the retained jurisdiction would end." Docket No. 61 at 5-6. The Court strongly disagrees.

To begin with, the Court disagrees that a stipulation of dismissal must expressly retain jurisdiction or incorporate a settlement agreement's terms to facilitate continued federal jurisdiction.[3] But, even if Defendants are right on this point, their motion to dismiss is still sanctionable because, here, the Stipulation of Dismissal indisputably incorporated the Settlement Agreement's terms. Specifically, as noted above, the Stipulation of Dismissal set forth that "[The parties] having entered into a Stipulation of Settlement and Order that has been 'so ordered' by this Court . . . IT IS HEREBY STIPULATED AND AGREED by and between Plaintiffs and Defendants, by their

---

[3] Defendants' argument relies on Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380-381, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). There, the Supreme Court found that a district court failed to retain jurisdiction to enforce a settlement agreement, but remarked "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal-either by separate provision . . . or by incorporating the terms of the settlement agreement in the order." Id. Defendants argue that this language requires a district court seeking to retain jurisdiction to, in a dismissal order, either: (1) expressly retain jurisdiction; or (2) expressly incorporate a settlement agreement. But the Court understands this language as setting forth only two non-exclusive methods for retaining jurisdiction. Elsewhere, Kokkonen suggests that a judicially ordered settlement, by itself, permits continued jurisdiction under the Court's "inherent power," with the Kokkonen district court failing to retain jurisdiction because its "only order . . . was that the suit be dismissed." Id. at 380. Conversely, in this action, the Court issued two distinct orders: a "so ordered" Settlement Agreement, and a "so ordered" dismissal. Additionally, Kokkonen held that a Court can retain "retain jurisdiction over the settlement contract [] if the parties agree." Id. at 382. And that's exactly what happened here.

undersigned counsel, that the [Litigation] be dismissed with prejudice to all parties." Thus, the Stipulation of Dismissal not only referenced the Settlement Agreement, it incorporated that the Court "so ordered" this Agreement, and that the Agreement was a condition precedent to the impending dismissal. Indeed, as Defendants acknowledge, an unsigned Stipulation of Dismissal was, itself, Exhibit C to the Settlement Agreement, reflecting how these "so ordered" documents were inextricably intertwined.

True, as Defendants point out, the Stipulation of Dismissal did not regurgitate each and every term in the Settlement Agreement. But Defendants point to no authority that requires such mindless repetition, nor do they explain why the law should create a new rule demanding such ceremonial parroting. See generally FED. R. CIV. P. 11(b)(2). And the Court itself sees no reason why, to enforce its orders, it must go through the silly and idiotic task of repeating for the parties again what they should already know: the Settlement Agreement's express terms. By analogy, in a summary judgment opinion, it is sufficient for the Court to cite FED. R. CIV. P. 56; it need not quote the rule's entire text to properly enforce and apply it.

Moreover, Defendants argument that the Stipulation of Dismissal's sole purpose was to effectuate a "dismiss[al] with prejudice" flouts basic contract law principles. Docket No. 60

9

at 5. If all the Court wanted to do was dismiss with prejudice, six words would have sufficed: "This case is dismissed with prejudice." Instead, the parties, and the Court, made an express point of referencing the Settlement Agreement, its "so ordering," and its connection to the dismissal – words that Defendants' interpretation renders pointless. And, under New York law, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."[4] ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co., 564 F.3d 81, 88 (2d Cir. 2009) (internal citations and quotations omitted).

The Court concedes that, although the above reasoning demonstrates Defendants' frivolity and illogic in moving to dismiss, it does not necessary show bad faith. But Defendants' second argument, that the Settlement Agreement's "logical construct" suggests that the Court "had continued jurisdiction to enforce the Settlement Agreement" only "until the case was dismissed with prejudice" supports such an inference. Docket No. 61 at 5-6. This argument is absurd, for two reasons. First, as Defendants aptly point out, the Settlement Agreement did not dismiss this case. So the Settlement Agreement could not, in any way, have deprived the Court of the jurisdiction it

---

[4] The Stipulation of Dismissal is not only a Court Order. It is also Exhibit C to the Settlement Agreement, and thus part of the parties' contract.

had exercised throughout this litigation.[5]  Second, Defendants' purported position contradicts their own argument that the Settlement Agreement's "cure" provision absolved them of liability for their breach.  See Docket No. 55 at 5-6.  After all, the "cure" provision's plain language sets forth the procedural steps that a complaining party must take before it can "apply to the United States District Court for the Eastern District of New York to enforce this [Settlement Agreement]."  See supra at 3.  So, while simultaneously insisting that the Settlement Agreement does not permit the Court's continued jurisdiction, Defendants' actually asked the Court to enforce one of the very provisions conferring this jurisdiction.  And third, despite making an argument founded in contractual interpretation, Defendants' attorneys did not attempt -- even in response to this Order to Show Cause -- to submit declarations from their clients attesting that they intended this interpretation.  Rather, from their own declarations, it appears that Defendants' attorneys conjured up this interpretation, in an attempt to nullify the Court's jurisdiction.  See Docket Nos. 61-1, 61-2.

---

[5] Importantly, Defendants' attorneys do not even claim that they found some authority to support their position that a district court can somehow lose jurisdiction, mid-litigation, simply because the parties have entered into conditional settlement agreement that has not yet resulted in dismissing the case.

11

Defendants' general course of conduct also provides a strong inference of bad faith. See generally Wechsler v. Hunt Health Systems, Ltd., 216 F. Supp. 2d 347, 357 (S.D.N.Y. 2002). Defendants ignored Plaintiffs' initial notice of breach, yet had the gall to argue that their supposed "cure" (which they never told Plaintiffs about) foreclosed Plaintiffs' enforcement action. Defendants then ignored Plaintiffs' request to re-open this case, and failed to appear at the initial status conference (Docket No. 35), which led to the Court's first Order to Show Cause (Docket No. 36). Next, Defendants repeatedly sought adjournments of the Show Cause hearing before Magistrate Judge Wall (Docket Nos. 37-39), leading, in part, to the hearing being delayed for several months. Defendants did not, however, use these numerous adjournments to prepare a substantive defense. Instead, when the Show Cause hearing finally took place, Defendants failed to present witnesses or object to Plaintiffs' evidence. Then, they had the audacity to argue before me that they didn't know that a "Show Cause" hearing required them to, in fact, Show Cause, or otherwise present evidence. See Docket No. 55 at 2 ("The was no indication from the Court that the litigation was at a phase where trial witnesses were to be called, evidence was to be authenticated, etc. It was assumed that a trial schedule would be set."). In addition, they filled their Objections with several other frivolous arguments,

12

including a bizarre interpretation of the "cure" provision that, if adopted, would "totally frustrate the Settlement Agreement's purpose." 2010 WL 4568980 at *4, 2010 U.S. Dist. LEXIS 117091 at *10. And they failed to previously present many of these arguments to Judge Wall, flouting the settled principle that parties should not raise arguments to a district judge that they failed to first present to a referred magistrate judge. See Chappero v. West, 04-CV-8018, 2009 U.S. Dist. LEXIS 60487, at *9 (S.D.N.Y. July 15, 2009). Considering Defendants' conduct in its entirety, the Court finds that it reflects a manifest and calculated disrespect for the Court and its authority (i.e., not appearing for conferences, incredulously feigning ignorance about what happens at a Show Cause hearing), going beyond even Defendants' nonsensical argument that the Settlement Agreement's jurisdictional clauses lack any continuing force.

There is only one conceivable explanation for this behavior: Defendants' counsel recognized that their clients faced liability, and that nothing "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" could change this fact. FED. R. CIV. P. 11(b)(2). But, rather than conceding liability or reaching a prompt settlement, Defendants' counsel instead endeavored "to harass, cause unnecessary delay, [and] needlessly increase the cost of litigation," in an attempt to

13

frustrate Plaintiffs' legitimate litigation efforts. FED. R. CIV. P. 11(b)(1). That's bad faith.

III. Amount of Sanctions

The Court finds that, in filing a bad faith, frivolous motion to dismiss, Defendants' counsel violated Rule 11(b). The question then turns to an appropriate sanction. In this regard, the Court notes that, because Plaintiffs have a contractual right to recover all attorneys' fees expended, the Court is the primary victim of this legal misconduct. It is the Court which wasted valuable time addressing the motion to dismiss, and even more time deciding this necessary sanctions Order. In total, after consulting with Judge Wall's Chambers, I estimate that the Court spent approximately 28 hours dealing with Defendants' motion to dismiss, and its Rule 11 fallout.

In this district, when an attorneys' fee award is appropriate, the Court generally awards $175 an hour for a first year associate's time. Masino v. Columbus Const. Corp., 08-CV-1592, 2009 WL 2566956, at *8 (E.D.N.Y. Aug. 19, 2009). My time, Judge Wall's time, and the time of our experienced law clerks, is at least as valuable as a first year associate's. Accordingly, under Rule 11(b), the Court holds Defendants' attorneys, J. Curtis Edmondson and Scott Darren Frendel, jointly and severally liable in the amount of $4,900, representing 28

hours of the Court's wasted time multiplied by a first year associate's hourly rate.

CONCLUSION

The Court finds that Defendants' attorneys, J. Curtis Edmondson and Scott Darren Frendel, have violated Rule 11(b), and are jointly and severally liable in the amount of $4,900. Attorneys Edmondson and Frendel are directed to pay this sum into the Court's registry by January 21, 2011.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
January 18, 2011